IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EPIGMENIO VEGA, JR. | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-05-CV-1943-G |
| DOUGLAS DRETKE, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Epigmenio Vega, Jr., appearing *pro se*, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

Petitioner was charged by indictment with first-degree murder, enhanced by a prior conviction for unauthorized use of a motor vehicle, to which he pled not guilty. A jury convicted petitioner of the lesser-included offense of manslaughter, found the enhancement paragraph true, and sentenced him to 38 years confinement. His conviction and sentence were affirmed on direct appeal. *Vega v. State*, No. 08-01-00034-CR, 2003 WL 21357544 (Tex. App.--El Paso, Jun. 12, 2003, pet. ref'd). Petitioner also filed an application for state post-conviction relief. The application was denied without written order. *Ex parte Vega*, No. 61,561-01 (Tex. Crim. App. Jul. 13, 2005). Petitioner then filed this action in federal court.

II.

In two grounds for relief, petitioner contends that: (1) he received ineffective assistance of counsel; and (2) the evidence was factually insufficient to support his conviction.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 120 S.Ct. at 1523; *see also Pondexter v. Dretke*, 346 F.3d 142, 145-46 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 2160 (2004). Stated differently, "a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'"

*Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003), *quoting Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).

With respect to mixed questions of fact and law, a federal habeas court must give deference to state court findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.), *cert. denied*, 121 S.Ct. 508 (2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

B.

Petitioner alleges that the performance of his trial counsel was constitutionally deficient in numerous respects. In particular, petitioner complains that his attorney: (1) never filed a motion requiring the state to provide notice of its intent to use evidence of a prior conviction; (2) failed to request a jury instruction limiting the consideration of such evidence; (3) did not object when the prosecutor presented evidence of the prior conviction; (4) failed to challenge a prospective juror who could not consider imposing the statutory minimum punishment; (5) elicited damaging testimony from two witnesses on cross-examination; (6) failed to prepare petitioner for his testimony; and (7) did not object to the prosecutor's improper closing argument.[1]

---

[1] In his answer, respondent argues that two of these claims are barred from federal review because the state habeas court found that "[i]ssues raised and rejected on direct appeal are procedurally barred." (*See* Resp. Ans. at 9-10; St. Hab. Tr. at 160). Respondent either misstates or misunderstands the procedural bar doctrine. A federal court may not consider the merits of a habeas claim if a state court has denied relief due to a *procedural default*. *Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992). Here, the state court of appeals rejected two of petitioner's ineffective assistance of counsel claims because he failed to "rebut[ ] the strong presumption that trial counsel's conduct falls within the wider range of reasonable professional assistance." *Vega*, 2003 WL 21357544 at *3, *citing Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). This language suggests that the state court rejected petitioner's claims because he failed to meet his burden of proof, not on procedural grounds. Such a determination does not bar federal habeas review.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. The Fifth Circuit has described that standard as "requiring that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005), *quoting United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Strickland*, 104 S.Ct. at 2067. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (habeas petitioner must show that trial result was unreliable or proceeding fundamentally unfair due to deficient performance of counsel).

2.

The first three instances of ineffective assistance of counsel cited by petitioner are either conclusively negated by the record or patently frivolous. Prior to trial, defense counsel filed a motion requiring the state to provide reasonable notice of its intent "to introduce in its case in chief

any evidence of other alleged or purported crimes, wrongs or acts of the Defendant[.]" (St. App. Tr. at 23).[2] In a sworn affidavit filed with the state habeas court, Noel Portnoy, counsel for petitioner, testified that the prosecutor provided notice of his intent to present enhancement evidence, and Portnoy examined that evidence before trial. (St. Hab. Tr. at 157, ¶ 7). Moreover, the indictment itself was sufficient notice of the state's intent to use petitioner's prior conviction for unauthorized use of a motor vehicle for enhancement purposes. *See Brooks v. State*, 957 S.W.2d 30, 33-34 (Tex. Crim. App. 1997) (noting that it is "permissible and perhaps preferable" to provide notice of prior convictions used as enhancements by alleging such convictions in the indictment). Because defense counsel requested and received notice of the state's intent to introduce evidence of a prior conviction, his performance was not deficient in that regard.

Nor was counsel ineffective for failing to request a limiting instruction. Although the record is silent as to whether counsel asked for an instruction limiting the jury's consideration of prior convictions or offenses, the charge given by the court contains such an instruction:

> You are instructed in this case that certain evidence was admitted before you in regard to the defendant having committed other offenses other than the one for which he is now on trial. *You are instructed that such evidence cannot be considered against the defendant as any evidence of his guilt in this cause*.

(St. App. Tr. at 63) (emphasis added). These claims are without merit and should be summarily rejected.

---

[2] Tex. R. Evid. 609(f), which is cited by petitioner in his brief, provides:

> Evidence of a conviction is not admissible if after timely written request by the adverse party specifying the witness or witnesses, the proponent fails to give to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

TEX. R. EVID. 609(f).

3.

Petitioner also criticizes his lawyer for failing to challenge a prospective juror who said she could not impose the statutory minimum punishment in this case. During voir dire, the prosecutor informed the venire panel that the range of punishment for murder was not less than five years nor more than 99 years or life in prison. (SF-III at 43). Counsel then asked the panel if they could keep an open mind and assess a proper punishment based on the facts. Several members indicated they might have a problem with a five-year sentence in a murder case. (*See id.* at 44-47, 50-57). Among those was a woman named Reagler. When asked if it would be impossible for her to consider a five-year sentence regardless of the evidence, Reagler replied, "I couldn't--". (*Id* at 55). Defense counsel did not strike Reagler and she was one of 12 jurors selected to hear the case.[3]

In an affidavit filed with the state habeas court, counsel explained that he did not strike Reagler, who is African-American, because "minorities on juries . . . tend to exercise independent judgment in the sense that they do not 'rubberstamp' the opinions of the persons representing the state." (St. Hab. Tr. at 156). While the court questions the accuracy and propriety of such racial stereotypes, petitioner has not shown that the explanation offered by his attorney is so lacking that it amounts to ineffective assistance of counsel. *See Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989), *cert. denied*, 110 S.Ct. 1311 (1990) (observing that the selection of a jury "is inevitably a call upon experience and intuition" requiring defense counsel to "draw upon his own insights and empathetic abilities"). This ground for relief should be overruled.

---

[3] At least nine other members of the venire panel expressed some reservations about imposing a five-year sentence. (*See* SF-III at 43-57). Of those venire members, none were struck by the state and only one was struck by the defense. (*See* St. App. Tr. at 92-93). It is not clear from the record which, if any, of the other venire members served on the jury.

4.

Next, petitioner contends that his attorney was ineffective for eliciting damaging testimony from two witnesses on cross-examination. At trial, Mary Buchanan, the mother of petitioner's children, testified that petitioner and Jose Cruz Ayala, the murder victim, attended a party at her home and drank until the early hours of the morning. (SF-IV at 20-21). The next day, Buchanan learned that Ayala had been stabbed and killed. (*Id.* at 24). On cross-examination, defense counsel asked Buchanan:

> Q. [BY DEFENSE COUNSEL]: Prior--prior to December 12th or December 11th had--had Mr. Vega ever caused you trouble in your home? Had he ever caused any fights?
>
> A. Yes, at one time my daughter--
>
> Q. When--
>
> A. --was--my daughter was--he wasn't her boyfriend. They were friends. They had gone out. And [petitioner] came home that night and seen my daughter there sitting down with somebody by--they called--his name is James. They call him Jimbo, and [petitioner] beat him up in my house.
>
> Q. And when was this?
>
> A. That was, I would say, about a year and a half ago. Maybe two years.
>
> Q. Did he use any weapons?
>
> A. I didn't see any.
>
> Q. Had there been fights between [petitioner] and Jose Ayala before December 11th?
>
> A. Fights? I can remember arguments and disagreements, but I--I don't remember any fights.

(*Id.* at 29-30). Dan Lusty, a Dallas police officer, also testified at trial. Lusty said that petitioner gave a voluntary statement following his arrest for the murder of Jose Ayala. That statement, in which petitioner admitted to accidentally stabbing Ayala following a shoving match, was admitted into evidence and read to the jury. (*Id.* at 104-09; St. Exh. 29). In response to questions from defense counsel, Lusty testified that petitioner was cooperative with the police, did not ask for a lawyer, and voluntarily gave the statement. (*See* SF-IV at 110-11). On re-direct, Lusty said that petitioner was not cooperative at first and initially refused to provide any information about the location of the victim. (*Id.* at 112-14).

Petitioner now complains that the cross-examination of Buchanan and Lusty was poor trial strategy and prejudicial to his case. The court disagrees. Petitioner never denied stabbing Ayala. As a result, counsel focused his efforts on trying to convince the jury that petitioner acted in self-defense. Part of this strategy was to show that petitioner had no malice or history of violent behavior toward Ayala. In asking Buchanan whether petitioner had ever caused trouble in her home, counsel was obviously unaware of the altercation between petitioner and his daughter's boyfriend. Nevertheless, counsel was able to establish that the altercation occurred nearly two years before the instant offense and that no weapons were used. Buchanan further acknowledged that there were no fights between petitioner and Ayala before the stabbing, only "arguments and disagreements." By distinguishing the facts surrounding petitioner's violent behavior toward his daughter's boyfriend from the stabbing of Ayala, counsel effectively minimized any prejudice caused by his cross-examination of Buchanan.

The same is true for counsel's cross-examination of Lusty. Petitioner's written confession was already in evidence and the voluntariness of that confession was never at issue. Therefore, it is difficult to envision how petitioner was harmed by testimony that he was cooperative. Nor was

defense counsel ineffective for "opening the door" to evidence that petitioner initially provided the police with false information. As counsel explained to the state habeas court:

> [I]t was determined prior to trial, with Mr. Vega's agreement, that he almost certainly would testify, thereby opening up . . . any inconsistent statements he may have made to the police, which Mr. Vega understood. One of the purposes of his testimony was, in part, to explain the inconsistencies between his written statement to the police and the wounds received by the deceased according to the autopsy.

(St. Hab. Tr. at 157).[4] Petitioner fails to allege, much less prove, that he was unaware of the consequences of testifying at trial. Consequently, petitioner cannot show that counsel was ineffective in his cross-examination of Lusty.

5.

Petitioner further alleges that he was not adequately prepared for questions about his criminal record. By testifying at trial, the state was permitted to impeach petitioner with evidence of prior felony convictions or crimes of moral turpitude. *See* TEX. R. EVID. 609(a). According to defense counsel, this was well-known to petitioner before he took the witness stand. (*See* St. Hab. Tr. at 157). The state habeas court considered this claim and found that the statements made by counsel in his affidavit "are worthy of belief." (*Id.* at 160). Petitioner has failed to rebut that credibility determination by clear and convincing evidence. *See Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir.), *cert. denied*, 114 S.Ct. 637 (1993), *citing Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982) (habeas statute obliges federal judges to respect credibility determinations made by the trier of fact).

---

[4] In his written confession, petitioner stated that he pulled out a knife to protect himself after Ayala became angry and charged him. While the knife was pointed at Ayala, petitioner felt it "stick him in the front of his body." (St. Exh. 29). However, the medical evidence shows that Ayala died from two deep stab wounds, both of which went through a rib and into his lung. According to the medical examiner, the force required to cause those injuries would be greater than a wound to the skin and the muscle. (*See* SF-IV at 120-22).

6.

In a related claim, petitioner criticizes his attorney for failing to object when the prosecutor argued:

> What do you know about this individual here [pointing to petitioner]? You judge his credibility. Well, *you know he's a convicted felon back in 1994, unauthorized use of a motor vehicle*. He's been in the penitentiary systems here in Texas. You know that.
>
> * * * *
>
> If they--if they wanted to prove that you, if they want to put Mr. Ayala on trial, which is what they're trying to do, they could have done that I think. But the source of that information is from the defendant and the defendant only. And when you talk about the defendant, you go back to what [the other prosecutor] said and you use your common sense, *you have a convicted felon*. You have a self-admitted repeated liar. And now he's asking you to believe him under oath.

(SF-V at 10, 31) (emphasis added). Under Texas law, a prosecutor may summarize the evidence presented at trial and ask the jury make reasonable deductions from the evidence. *See Cobble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993), *cert. denied*, 115 S.Ct. 101 (1994). That is precisely what occurred here. As previously discussed, the state was permitted to impeach petitioner's testimony with evidence of his prior felony conviction for unauthorized use of a motor vehicle. Counsel had no basis for objecting when the prosecutor asked the jury to judge petitioner's credibility in light of his prior conviction. This ground for relief is without merit and should be overruled.

C.

Petitioner also contends that the evidence was factually insufficient to support his conviction for manslaughter and the implicit rejection of his self-defense claim. Under Texas law, intermediate appellate courts have the authority to review fact questions in criminal cases. *Clewis v. State*, 922

S.W.2d 126, 129 (Tex. Crim. App. 1996). This "factual sufficiency" review of the evidence is broader than a "legal sufficiency" challenge under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Instead of viewing the evidence in the light most favorable to the prosecution and determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," a factual sufficiency inquiry views all the evidence to determine whether the verdict "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Pruitt v. Cockrell*, No. 3-00-CV-1713-H, 2001 WL 1115339 at *13 (N.D. Tex. Sept. 14, 2001), *quoting Clewis*, 922 S.W.2d at 129, *and Stone v. State*, 823 S.W.2d 375, 381 (Tex. App. -- Austin 1992, pet. ref'd, untimely filed). The power of state appellate courts to review the factual sufficiency of the evidence derives from Texas statutory and constitutional authority. *Id.*, 2001 WL 1115339 at *14, *citing Clewis*, 922 S.W.2d at 129-30, *and Bigby v. State*, 892 S.W.2d 864, 874-75 (Tex. Crim. App. 1994), *cert. denied*, 115 S.Ct. 2617 (1995). There is no corresponding right of review under the United States Constitution. *Id.* Consequently, a claim based on factually insufficient evidence does not implicate a federal constitutional right and is not cognizable under 28 U.S.C. § 2254. *See id.*

Here, petitioner claims that the evidence was *factually insufficient* to support his conviction. He does not challenge the *legal sufficiency* of the evidence under *Jackson*. Nor was such a claim made on direct appeal. Therefore, petitioner is not entitled to federal habeas relief on this ground.

## **RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file

written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED:  January 30, 2006.

                                                JEFF KAPLAN
                                                UNITED STATES MAGISTRATE JUDGE